IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RISA CACCIOTTI,

        Case No.:  5:25-cv-00033

    Plaintiff,

v.

WALMART, INC.,
VEVOR STORE, LLC, and
SANVEN CORPORTATION,

    Defendants,

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, RISA CACCIOTTI ("Mrs. CACCIOTTI"), by and through undersigned counsel, hereby sues Defendants, WALMART, INC. ("WALMART"), VEVOR STORE, LLC ("VEVOR"), and SANVEN CORPORATION ("SANVEN"). As grounds thereof, Plaintiff states:

### JURISDICTION, VENUE AND PARTIES

1.    This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney's fees thus vesting this Court with jurisdiction under 28 U.S.C. §1332.  Additionally, venue is proper pursuant to 28 U.S.C. §1391 as the incident which gives rise to this action occurred within this judicial district.

2.    At all times material to this action, RISA CACCIOTTI, was and is a

citizen of the State of Florida and she resides in this judicial district.

3.      WALMART, INC. was and is a Delaware corporation with its principal place of business at 702 SW 8th Street, Bentonville, Arkansas 72716., doing business throughout the State of Florida, for which it receives substantial revenue. WALMART's registered agent for service of process is CT CORPORATION SYSTEM, 1200 South Pine Island Road, Plantation, FL 33324.

4.      At all times material to this action, WALMART submitted itself to the jurisdiction of this Honorable Court by doing, personally or through its agents, the following acts:

    a. **SPECIFIC JURISDICTION:** Operating, conducting, engaging in, or carrying on a business or business venture in Florida, including by maintaining business interests and stores in the state of Florida;

    b. **SPECIFIC JURISDICTION:** Having an office or agency in Florida, including through the maintenance of business interests and stores in the state of Florida;

    c. **SPECIFIC JURISDICTION:** Committing a tortious act within Florida, which includes but is not limited to: the supply, sale, and/or distribution of defective products including those which were defectively designed, manufactured, and/or which contain defective warnings or a complete lack of warnings and whereby, the exercise of control or lack thereof in the process of supplying and not recalling defective equipment and, further, in failing to warn those who might reasonably be damaged by defective products constitutes tortious conduct under Florida law;

    d. **SPECIFIC JURISDICTION:** Causing injury to persons within the state of Florida arising out of an act or omission by Defendant even while Defendant was outside the state of Florida where—at the time of injury—Defendant was engaged in solicitation or service

activities within the state of Florida, including through business interests and stores in the state of Florida;

e. **SPECIFIC JURISDICTION:** Selling and having delivered to Plaintiff, in Florida, defective products including the product at issue in this lawsuit; and

f. **GENERAL JURISDICTION:** Engaging in substantial and not isolated activity within Florida, including through business interests and stores in the state of Florida.

5.    Accordingly, at all times material to this action, WALMART voluntarily submitted itself to the jurisdiction of this Court and, as a result, WALMART is subject to this Court's jurisdiction.

6.    VEVOR STORE, LLC was and is a California Limited Liability Company with its principal place of business at 9448 Rinchmond Place #E, Rancho Cucamonga, California 91730. VEVOR's registered agent for service of process is Yanping Wang, also located at 9448 Rinchmond Place #E, Rancho Cucamonga, California 91730.

7.    At all times material to this action, VEVOR submitted itself to the jurisdiction of this Honorable Court by doing, personally or through its agents, the following acts:

a. **SPECIFIC JURISDICTION:** Operating, conducting, engaging in, or carrying on a business or business venture in Florida, including by selling its products in Florida, including through co-defendant WALMART's stores in Florida;

3

b. **SPECIFIC JURISDICTION:** Maintaining business interests in Florida by selling products to consumers in Florida through online stores for which delivery is made to Florida consumers, including selling the defective product at issue to a Florida consumer, which was delivered in Florida;

c. **SPECIFIC JURISDICTION:** Committing a tortious act within Florida, which includes but is not limited to: the supply, sale, and/or distribution of defective products including those which were defectively designed, manufactured, and/or which contain defective warnings or a complete lack of warnings and whereby, the exercise of control or lack thereof in the process of supplying and not recalling defective equipment and, further, in failing to warn those who might reasonably be damaged by defective products constitutes tortious conduct under Florida law;

d. **SPECIFIC JURISDICTION:** Causing injury to persons within the state of Florida arising out of an act or omission by Defendant even while Defendant was outside the state of Florida where—at the time of injury—Defendant was engaged in solicitation or service activities within the state of Florida, including through business interests and online sales in the state of Florida; and,

e. **GENERAL JURISDICTION:** Engaging in substantial and not isolated activity within Florida, including through business interests and sales in the state of Florida through Florida retailers.

8. Accordingly, at all times material to this action, VEVOR voluntarily submitted itself to the jurisdiction of this Court and, as a result, VEVOR is subject to this Court's jurisdiction.

9. SANVEN CORPORATION was and is a California corporation with its principal place of business at 9448 Rinchmond Place #E, Rancho Cucamonga, California 91730. SANVEN CORPORATION's registered agent for service of process is FUYU JIAO, also located at 9448 Rinchmond Place #E, Rancho

Cucamonga, California 91730.

10.    At all times material to this action, SANVEN CORPORATION submitted itself to the jurisdiction of this Honorable Court by doing, personally or through its agents, the following acts:

a. **SPECIFIC JURISDICTION:** Maintaining business interests in Florida by importing products that are then sold to consumers in Florida through online stores for which delivery is made to Florida consumers, including importing the defective product at issue, which was delivered in Florida;

b. **SPECIFIC JURISDICTION:** Committing a tortious act within Florida, which includes but is not limited to: the supply, sale, and/or distribution of defective products including those which were defectively designed, manufactured, and/or which contain defective warnings or a complete lack of warnings and whereby, the exercise of control or lack thereof in the process of supplying and not recalling defective equipment and, further, in failing to warn those who might reasonably be damaged by defective products constitutes tortious conduct under Florida law;

c. **SPECIFIC JURISDICTION:** Causing injury to persons within the state of Florida arising out of an act or omission by Defendant even while Defendant was outside the state of Florida where—at the time of injury—Defendant was engaged in solicitation or service activities within the state of Florida, including through business interests and sales of its imported products in the state of Florida; and,

d. **GENERAL JURISDICTION:** Engaging in substantial and not isolated activity within Florida, including through business interests and sales of its imported products in the state of Florida.

11.    Accordingly, at all times material to this action, SANVEN voluntarily submitted itself to the jurisdiction of this Court and, as a result, SANVEN is subject

5

to this Court's jurisdiction.

12.    The incident that gave rise to this action occurred in Marion County, Florida – a county located within this judicial district. *See* 28 U.S.C. § 1391.

## ALLEGATIONS COMMON TO ALL COUNTS

13.    On or about February 11, 2024, Plaintiff purchased a VEVOR Donut Fryer ("Subject Donut Fryer") from WALMART's online shopping website.

14.    The Subject Donut Fryer was delivered to Plaintiff in Marion County, Florida shortly thereafter.

15.    The Subject Donut Fryer was imported by Defendant, SANVEN.

16.    The Subject Donut Fryer was branded VEVOR and sold and distributed by Defendant, VEVOR.

17.    The Subject Donut Fryer was sold and distributed by Defendant, WALMART.

18.    The Subject Donut Fryer contains an oil tank that is intended to hold hot oil for frying donut batter.

19.    A 9-liter capacity hopper affixes to the side of the oil tank with a moveable arm that permits the hopper to be moved about. A photo of the same type make and model as the Subject Donut Fryer with the affixed hopper at issue is depicted below.



20.    The Subject Donut Fryer sits directly on the counter and it is normal and foreseeable for it to not be secured in any fashion.

21.    On or about July 20, 2024, Plaintiff was making donuts in her kitchen utilizing the Subject Donut Fryer on her kitchen counter when the hopper was rotated on its moveable arm away from the top of the oil tank.

22.    Due to the Subject Donut Fryer being unsecured, when the hopper was rotated, the weight of the hopper and arm caused the Subject Donut Fryer to tip over sending scalding oil onto a significant portion of Plaintiff's body ("Subject Incident").

23.    As a result of the Subject Incident, Plaintiff sustained permanent catastrophic injuries, which are described in greater detail below.

## COUNT I
## <u>STRICT LIABILITY AGAINST WALMART, INC.</u>

24.    Plaintiff realleges paragraphs 1 through 5, and 12 through 23 above, as if restated verbatim herein.

25.    At all relevant times, WALMART was engaged in the business of maintaining, marketing, supplying, selling, leasing, licensing, and otherwise distributing and placing into the stream of commerce donut fryers, including the Subject Donut Fryer.

26.    WALMART distributed the Subject Donut Fryer into the stream of commerce in defective condition on or about February 11, 2024, when WALMART sold the Subject Donut Fryer to Plaintiff.

27.    At no time was the Donut Fryer subjected to any unintended and/or unforeseeable conditions.

28.    At all relevant times, including at the time of the Subject Incident, Plaintiff was using the Subject Donut Fryer in a manner intended and reasonably foreseeable by WALMART.

29.    The Subject Donut Fryer reached Plaintiff, the ultimate user of the product, without any substantial change in its condition from the time it was sold and/or distributed by WALMART.

30.    WALMART placed the Subject Donut Fryer into the stream of commerce intending that it be used in the precise manner that it was being used at

the time of the Subject Incident, which proximately caused the injuries of Plaintiff.

31.    At the time of the incident, Plaintiff was using the Subject Donut Fryer without knowledge of any defect in the Subject Donut Fryer or of any danger to her as a result of using it in the manner it was being used.

32.    When Plaintiff was injured by the Subject Donut Fryer, the Subject Donut Fryer was defective and unreasonably dangerous to foreseeable end users, consumers, and operators, including Plaintiff, for one or more of the following reasons:

    a. The Subject Donut Fryer was defectively designed;

    b. The Subject Donut Fryer failed to include or incorporate adequate warnings, including, but not limited to, warnings of the above defects and hazards;

    c. The Subject Donut Fryer failed to incorporate safe designs to prevent the type of foreseeable accident described herein;

    d. The Subject Donut Fryer failed to incorporate safe designs to prevent the product from tipping over during normal and foreseeable use; and

    e. The Subject Donut Fryer was not suitable for its intended use.

33.    The defective and unreasonably dangerous condition of the Subject Donut Fryer existed at the time the product was sold and/or distributed by WALMART.

34.    On or about July 20, 2024, the Subject Donut Fryer was in substantially the same defective condition at the time of the Subject Incident as it was when it left

9

Defendant, WALMART's possession or control.

35.    As a direct and proximate result of the defective Subject Donut Fryer, Plaintiff was injured.

36.    As a direct and proximate result of the defective Subject Donut Fryer, Plaintiff, Mrs. CACCIOTTI suffered damages, including significant bodily injuries, resulting pain and suffering, aggravated bodily injuries, aggravation of preexisting injuries, impairment, disability, disfigurement, scarring, burns, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment in the past and future, and pain and suffering in the past and future. The injuries Plaintiff sustained are permanent within a reasonable degree of medical probability and she will continue to suffer losses in the future.

WHEREFORE, Plaintiff, RISA CACCIOTTI, demands judgment against Defendant, WALMART, INC., for damages, costs, interest as allowed by law, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## COUNT II
## NEGLIGENCE AGAINST VEVOR STORE, LLC

37.    Plaintiff realleges paragraphs 1 through 2, 6 through 8, and 12 through 23 above, as if restated verbatim herein.

38.    VEVOR designed, manufactured, constructed, assembled, tested, inspected, distributed, and/or sold the Subject Donut Fryer.

10

39. **DUTY:** In designing, manufacturing, constructing, assembling, testing, inspecting, distributing, and/or selling the Subject Donut Fryer, VEVOR had a duty to users, operators, consumers and bystanders, to provide products that were safe for their intended and foreseeable uses. VEVOR was under a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings for, package, distribute, and sell the Subject Donut Fryer in a reasonably safe condition so as not to present a danger to consumers who reasonably and expectedly under ordinary circumstances would come into contact with the Subject Donut Fryer, including Plaintiff.

40. **BREACH:** VEVOR breached its duty of reasonable care owed to Plaintiff in one or more of the following ways:

    a. Failing to properly design, manufacture, assemble, and/or sell the Subject Donut Fryer in such a manner that it had adequate and/or effective safety devices and measures;

    b. Failing to properly design, manufacture, assemble, and/or sell the Subject Donut Fryer so that it was reasonably safe for all foreseeable uses;

    c. Failing to properly design, manufacture, assemble, test, inspect, label, package, and otherwise place the Subject Donut Fryer on the market for sale to the public in a condition free of defects and hazards which created an unreasonable danger of injury or death to consumers under normal and foreseeable circumstances;

    d. Marketing, promoting, advertising and representing that the Subject Donut Fryer was suitable for use when, in fact, it was not;

    e. Failing to properly design, manufacture, assemble, and/or sell the

11

Subject Donut Fryer in such a manner that it would not unexpectedly tip over; and

f. Failing to provide adequate warnings, proper documentation or notices to alert consumers regarding the hazardous conditions described above.

41. **CAUSATION:** The negligence described above directly and proximately caused Plaintiff's damages in that they directly, and in a natural and continuous sequence, produced or contributed substantially to Plaintiff's injuries.

42. **DAMAGES:** As a direct and proximate result of the foregoing, Plaintiff suffered damages, including significant bodily injuries, resulting pain and suffering, aggravated bodily injuries, aggravation of preexisting injuries, impairment, disability, disfigurement, scarring, burns, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment in the past and future, and pain and suffering in the past and future. The injuries Plaintiff sustained are permanent within a reasonable degree of medical probability and she will continue to suffer losses in the future.

**WHEREFORE**, Plaintiff demands judgment against Defendant, VEVOR STORE, LLC for damages, costs, interest as allowed by law and such other relief as this Court deems just.

**COUNT III**
**STRICT LIABILITY AGAINST VEVOR STORE, LLC**
**(DEFECTIVE DESIGN)**

43. Plaintiff realleges paragraphs 1 through 2, 6 through 8, and 12 through

12

23 above, as if restated verbatim herein.

44. VEVOR is in the business of designing, manufacturing, constructing, assembling, testing, inspecting, distributing, and/or selling products, including the Subject Donut Fryer.

45. VEVOR placed the Subject Donut Fryer in the stream of commerce— either directly or through distributors—all while VEVOR knew or should have known the manner in which the Subject Donut Fryer was reasonably likely to be used, including in situations where inspection for defects and dangers by the end user could not, did not, or do not occur.

46. At all relevant times, including at the time of the Subject Incident, Plaintiff was using the Subject Donut Fryer in a manner intended and reasonably foreseeable by Defendants.

47. The Subject Donut Fryer reached Plaintiff, the ultimate user of the product, without any substantial change in its condition from the time it was sold and/or distributed by Defendants.

48. The Subject Donut Fryer was defective and unreasonably dangerous to ultimate users, operators or consumers, including Plaintiff, when sold and distributed by VEVOR because of defects therein, which permitted the Subject Donut Fryer to be sold in a dangerous condition, including but not limited to the following:

    a. The Subject Donut Fryer was designed, manufactured, assembled, and/or sold in such a manner that it had inadequate and/or defective

13

safety devices and measures;

b. The Subject Donut Fryer was designed, manufactured, assembled, and/or sold in such a manner that it did not have adequate safety devices to prevent damage and injury to users due to the defective condition of the Subject Donut Fryer;

c. The Subject Donut Fryer was designed, manufactured, assembled, and/or sold in such a manner that it was capable of tipping over during normal and foreseeable use; and

d. The Subject Donut Fryer was designed, manufactured, assembled, and/or sold in such a manner that it failed to warn consumers, including Plaintiff, of the danger that the Subject Donut Fryer would experience sudden and unexpected tip overs that could result in burning.

49. For the reasons set forth above, the Subject Donut Fryer was unreasonably dangerous to foreseeable users, including Plaintiff, who used the Subject Donut Fryer in an ordinary and foreseeable manner. At the time VEVOR released the defective Subject Donut Fryer into the stream of commerce, safer designs were technologically available and feasible and their use on the Subject Donut Fryer would have prevented the injuries sustained by Plaintiff without substantially altering the design and/or costs of manufacturing the Subject Donut Fryer.

50. The defects described above directly and proximately caused the incident and damages sustained by Plaintiff in that they directly, and in a natural and continuous sequence, produced or contributed substantially to Plaintiff's injuries.

51. As a direct and proximate result of the foregoing, Plaintiff suffered

damages, including significant bodily injuries, resulting pain and suffering, aggravated bodily injuries, aggravation of preexisting injuries, impairment, disability, disfigurement, scarring, burns, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment in the past and future, and pain and suffering in the past and future. The injuries Plaintiff sustained are permanent within a reasonable degree of medical probability and she will continue to suffer losses in the future.

**WHEREFORE**, Plaintiff demands judgment against Defendant, VEVOR STORE, LLC for damages, costs, interest as allowed by law and such other relief as this Court deems just.

**COUNT IV**
**STRICT LIABILITY AGAINST VEVOR STORE, LLC**
**(FAILURE TO WARN)**

52.    Plaintiff realleges paragraphs 1 through 2, 6 through 8, and 12 through 23 above, as if restated verbatim herein.

53.    At all relevant times, Defendant, VEVOR, was engaged in the business of designing, engineering, manufacturing, maintaining, marketing, supplying, selling, leasing, licensing, and/or otherwise distributing and placing into the stream of commerce donut fryers, including the Subject Donut Fryer.

54.    VEVOR placed the Subject Donut Fryer into the stream of commerce in defective and unreasonably dangerous condition, without adequate warnings

15

against latent dangers resulting from foreseeable use of the Subject Donut Fryer of which it knew or should have known.

55.    VEVOR placed the Subject Donut Fryer into the stream of commerce intending and instructing that it be used in the precise manner that it was being used at the time of the above-mentioned incident which proximately caused the injuries of Plaintiff.

56.    At all relevant times, including at the time of the Subject Incident, Plaintiff was using the Subject Donut Fryer in a manner intended and reasonably foreseeable by Defendants.

57.    The Subject Donut Fryer reached Plaintiff, the ultimate user of the product, without any substantial change in its condition from the time it was sold and/or distributed by Defendants.

58.    At the time of the incident, Plaintiff was using the Subject Donut Fryer without knowledge of any defect in the Subject Donut Fryer or of any danger to her as a result of using it in the manner it was being used.

59.    VEVOR knew or should have known that the Subject Donut Fryer was prone to tipping over, which was inherent in the design, yet VEVOR provided insufficient warnings of this defect.

60.    VEVOR's failure to warn rendered the Subject Donut Fryer defective and unreasonably dangerous to foreseeable end users, including Plaintiff.

16

61. When Plaintiff was injured by the Subject Donut Fryer, the Subject Donut Fryer was defective and unreasonably dangerous to foreseeable end users, consumers, and operators, including Plaintiff.

62. The defective and unreasonably dangerous condition of the Subject Donut Fryer existed at the time the product was designed, built, manufactured, assembled, tested, inspected, maintained, sold, and distributed by VEVOR.

63. At the time of the Subject Incident, the Subject Donut Fryer was in substantially the same defective condition at the time of the above-mentioned incident as it was when it left Defendant, VEVOR's possession or control.

64. The defective and unreasonably dangerous design of the Subject Donut Fryer directly and proximately caused Plaintiff's injuries. The lack of adequate warnings left Plaintiff without reasonable opportunity to take precautionary measures to avoid her injuries.

65. As a direct and proximate result of the defective Subject Donut Fryer, Plaintiff, RISA CACCIOTTI, damages,  including significant bodily injuries, resulting pain and suffering, aggravated bodily injuries, aggravation of preexisting injuries, impairment, disability, disfigurement, scarring, burns, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment in the past and future, and pain and suffering in the past and future. The injuries Plaintiff sustained are permanent within a reasonable degree of medical

17

probability and she will continue to suffer losses in the future.

**WHEREFORE**, Plaintiff demands judgment against Defendant, VEVOR STORE, LLC for damages, costs, interest as allowed by law and such other relief as this Court deems just.

## COUNT V
## STRICT LIABILITY AGAINST SANVEN CORPORATION

66.     Plaintiff realleges paragraphs 1 through 2, and 9 through 23 above, as if restated verbatim herein.

67.     At all relevant times, SANVEN was engaged in the business of importing, maintaining, marketing, supplying, selling, leasing, licensing, and otherwise distributing and placing into the stream of commerce donut fryers, including the Subject Donut Fryer.

68.     SANVEN distributed the Subject Donut Fryer into the stream of commerce at some point prior to February 11, 2024, when it was imported by SANVEN.

69.     At no time was the Donut Fryer subjected to any unintended and/or unforeseeable conditions.

70.     At all relevant times, including at the time of the Subject Incident, Plaintiff was using the Subject Donut Fryer in a manner intended and reasonably foreseeable by Defendants.

71.     The Subject Donut Fryer reached Plaintiff, the ultimate user of the

product, without any substantial change in its condition from the time it was sold and/or distributed by Defendants.

72.    SANVEN placed the Subject Donut Fryer into the stream of commerce intending that it be used in the precise manner that it was being used at the time of the above-mentioned incident which proximately caused the injuries of Plaintiff.

73.    At the time of the incident, Plaintiff was using the Subject Donut Fryer without knowledge of any defect in the Subject Donut Fryer or of any danger to her as a result of using it in the manner it was being used.

74.    When Plaintiff was injured by the Subject Donut Fryer, the Subject Donut Fryer was defective and unreasonably dangerous to foreseeable end users, consumers, and operators, including Plaintiff for one or more of the following reasons:

   a. The Subject Donut Fryer was defectively designed;

   b. The Subject Donut Fryer failed to include or incorporate adequate warnings, including, but not limited to, warnings of the above defects and hazards;

   c. The Subject Donut Fryer failed to incorporate safe designs to prevent the type of foreseeable accident described herein;

   d. The Subject Donut Fryer failed to incorporate safe designs to prevent the product from tipping over during normal and foreseeable use; and

   e. The Subject Donut Fryer was not suitable for its intended use.

75.    The defective and unreasonably dangerous condition of the Subject

Donut Fryer existed at the time the product was sold and/or distributed by SANVEN.

76.    On or about July 20, 2024, the Subject Donut Fryer was in substantially the same defective condition at the time of the Subject Incident as it was when it left Defendant, SANVEN's possession or control.

77.    As a direct and proximate result of the defective Subject Donut Fryer, Plaintiff was injured.

78.    As a direct and proximate result of the defective Subject Donut Fryer, Plaintiff, Mrs. CACCIOTTI suffered damages, including significant bodily injuries, resulting pain and suffering, aggravated bodily injuries, aggravation of preexisting injuries, impairment, disability, disfigurement, scarring, burns, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment in the past and future, and pain and suffering in the past and future. The injuries Plaintiff sustained are permanent within a reasonable degree of medical probability and she will continue to suffer losses in the future.

WHEREFORE, Plaintiff, RISA CACCIOTTI, demands judgment against Defendant, SANVEN CORPORATION, for damages, costs, interest as allowed by law and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## JURY TRIAL DEMAND

**WHEREFORE**, RISA CACCIOTTI, hereby demands a trial by jury on all

issues so triable.

Dated: January 15, 2025

/s/ T. Michael Morgan
**T. MICHAEL MORGAN, ESQ.**
Florida Bar No.: 062229
**JOSHUA D. MOORE, ESQ.**
Florida Bar No.: 41680
**Morgan & Morgan, P.A.**
20 North Orange Avenue, Suite 1600
Orlando, FL 32801
Telephone: (407) 244-3209
mmorgan@forthepeople.com
joshmoore@forthepeople.com

/s/ Andrew F. Knopf
**ANDREW F. KNOPF, ESQ.**
Florida Bar No.: 658871
**J. BLAISE FISCHBACH, ESQ.**
Florida Bar No. 118194
**PAUL | KNOPF | BIGGER**
1560 N. Orange Ave., Suite 300
Winter Park, Florida 32789
Ph: (407) 622-2111; F: (407) 622-2112
andrew@pkblawfirm.com
blaise@pkblawfirm.com
teamAFK@pkblawfirm.com
team JBF@pkblawfirm.com